1  KATHLEEN A. CASHMAN-KRAMER (Bar No. 128861)
   PYLE SIMS DUNCAN & STEVENSON,
2  A Professional Corporation
   401 B Street, Suite 1500
3  San Diego, CA 92101
   Tel: 619-687-5200/Fax: 619-687-5210
4  E-mail: kcashman@psdslaw.com

5  DUANE S. HORNING (Bar No. 174995)
   CALIFORNIA BUSINESS LAW GROUP, PC
6  750 B Street, Suite 1620
   San Diego, CA 92101
7  Tel: 619-325-1555/Fax: 619-325-1559
   E-mail: dhorning@cblg.biz

8

9  Attorneys for Plaintiff, CAROL SHERIDAN

10

11                  UNITED STATES BANKRUPTCY COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

| 13  In Re: | Case No.  09-06331-JM7 |
|---|---|
| 14  JOSEPH JOHN SWEENEY and CYNTHIA | |
| 15  SWEENEY | ADV. NO. |
| 16       Debtors. | **COMPLAINT TO DETERMINE** |
| 17 | **DISCHARGEABILITY OF DEBT** **[11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6)]** |
| 18  CAROL SHERIDAN, | Judge: Hon. James W. Meyers |
| 19            Plaintiff, | Dept:   1 |
| 20  v. | |
| 21  JOSEPH JOHN SWEENEY; and | |
| 22  CYNTHIA SWEENEY, | |
| 23            Defendants. | |

24

25      Plaintiff CAROL SHERIDAN ("Plaintiff"), creditor and the party in interest in this

26  matter, respectfully represents and alleges as follows:

27  ///

28

                                        1

**GENERAL AND JURISDICTIONAL ALLEGATIONS**

1.     This Adversary Proceeding is being brought in connection with bankruptcy case number 09-06331-JM7, which was filed in this Court on May 7, 2009, under Chapter 7 of Title 11, United States Code, by the Debtors, JOSEPH JOHN SWEENEY and CYNTHIA SWEENEY ("Debtors" or "Defendants" or "Sweeneys").

2.     Plaintiff is informed and believes that Leslie T. Gladstone has been appointed as the trustee for the Chapter 7 estate of the Debtors in this matter.

3.     Plaintiff is informed and believes that Defendant, JOSEPH JOHN SWEENEY ("Joe Sweeney"), is a resident of San Diego County, California and was at all relevant times a real estate broker licensed by the State of California and was the Designated Officer Broker for TOTAL FINANCIAL CORPORATION, INC., dba Total Financial Corporation and dba Total Financial ("Total Financial").  Plaintiff is informed and believes that Joe Sweeney is married to Defendant, CYNTHIA SWEENEY ("Cynthia Sweeney").  Joe Sweeney acted on his own behalf and as agent for Defendants Total Financial and Cynthia Sweeney.  As the Designated Office Broker for Total Financial, Joe Sweeney is liable for the acts and omissions of Total Financial and its agents including, ROBERT JOHN DONOVAN ("Donovan"), and Cynthia Sweeney.

4.     Plaintiff is informed and believes that Cynthia Sweeney is a resident of San Diego County, California, was a California licensed sales person, and acted as an agent for Total Financial and Joe Sweeney for the acts and omissions that give rise to this action.  Plaintiff is informed and believes that at all relevant times alleged herein, Cynthia Sweeney's license was expired.  Plaintiff is informed and believes that Cynthia Sweeney is married to Defendant Joe Sweeney.

5.     Joe Sweeney and Cynthia Sweeney are collectively referred to herein as "Defendants" or the "Sweeneys."

6.     Plaintiff is a resident of San Diego County, California.

7.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, 11 U.S.C. § 523, District Court General Order 312(d) and Local Rule 7003 of

///

2

1  the Local Bankruptcy Rules of the District Court of the Southern District of California.  This is a

2  core proceeding pursuant to 28 U.S.C. § 157(b)(1).

3  **FACTUAL BACKGROUND**

4        8.      On or about February 19, 2009, Plaintiff filed an action against Debtors and other

5  Defendants, Total Financial and Donovan, in the Superior Court for the County of San Diego,

6  case number 37-2009-00083706-CU-BT-CTL ("State Court Action"), for Breach of Fiduciary

7  Duty, Constructive Fraud, Promissory Fraud, Concealment, Intentional Misrepresentation,

8  Negligent Misrepresentation, Fraud – Acts Fitted to Deceive, Conversion, Financial Abuse,

9  Negligence, Breach of Promissory Note and Breach of Listing Agreement.

10        9.      The Plaintiff's Complaint in State Court alleged the following facts:

11        (a)      As of March 1, 2008, Plaintiff was 65 years old.  Plaintiff is and at all

12  relevant times has been a senior citizen and a disabled adult under California Civil Code §§ 1761

13  and 3345 (West 2009), and an elder under California Welfare & Institutions Code § 15610.27

14  (West 2009).  Her condition impairs her ability to understand transactions such as alleged herein.

15  She has no real estate background.  Defendants were aware of Plaintiff's condition and her

16  resulting limitations in conducting real estate transactions.

17        (b)      At all relevant times alleged herein, there was a fiduciary relationship

18  between Plaintiff as principal and seller, on the one hand, and Defendants as agents and brokers,

19  on the other hand, in which Defendants owed fiduciary duties to Plaintiff.

20        (c)      Plaintiff formerly owned a condominium located at 4095 Bonita Road,

21  Unit 118, Bonita, California ("Property").  She resided in the Property as her principle residence.

22        (d)      In or about May 2005, Donovan on behalf of himself and as agent for Total

23  Financial, advised Plaintiff to refinance the then-existing first mortgage on the Property, and

24  arranged a new loan for Plaintiff in the amount of $276,000 from Downey Savings and Loan

25  Association, F.A. ("First Mortgage").  The First Mortgage was later assigned to Central Mortgage

26  Company.

27        (e)      Plaintiff decided to sell the subject Property in Bonita, purchase another

28  property in San Diego, and move into that other property as her primary residence.  Donovan and

1    Total Financial assisted Plaintiff in the purchase of the new property, and financing of the new

2    property, for which they were paid commissions.

3                    (f)        Plaintiff's purchase of a new property before a sale of the subject Property

4    put her in the position of having to make payments on both properties, which was a financial

5    hardship for Plaintiff.  Defendants were aware of this hardship.

6                    (g)        Total Financial and Donovan offered to list the Property for sale.  Donovan

7    advised her that the Property should be listed for a price of $384,900.  Total Financial and

8    Donovan represented in writing that at that list price, her estimated net sales proceeds would be

9    approximately $75,706.00, after deducting a brokerage fee of approximately $23,094, a

10   prepayment penalty on the First Mortgage of $7,000, and other customary closing and transaction

11   costs.

12                   (h)        On or about January 19, 2006, Plaintiff, on the one hand, and Total

13   Financial and Donovan, on the other hand, entered into a written RESIDENTIAL LISTING

14   AGREEMENT – EXCLUSIVE ("Listing Agreement") under which Total Financial and Donovan

15   agreed to act as agents and brokers in the sale of the Property.  The Listing Agreement in the

16   possession of Plaintiff is signed only by Plaintiff.  However, Donovan stated he would sign the

17   Listing Agreement "later."  Defendants, Total Financial and Donovan partially performed under

18   the Listing Agreement, and Plaintiff is informed and believes that one or more of the Defendants

19   executed the Listing Agreement.

20                   (i)        Defendants, Total Financial and Donovan sent Cynthia Sweeney to the

21   condominium as an agent of Total Financial ostensibly to take pictures for the listing.  However

22   Cynthia Sweeney did not bring a camera and instead expressed interest in her and Joe Sweeney

23   buying the property themselves as a rental property for a people coming to San Diego for medical

24   treatments.

25                   (j)        For months thereafter, Defendants, Total Financial and Donovan did little

26   or nothing to sell the property.  Defendants, Total Financial and Donovan did not procure a single

27   offer or even any prospective buyer or tour by an agent.  Defendants, Total Financial and

28   Donovan did nothing to advertise the property or hold any open houses.  Defendants, Total

4

1   Financial and Donovan left those duties to their client, Plaintiff.  There were only two visits by

2   any prospective buyer or agent, both procured by Plaintiff.  Essentially all Defendants, Total

3   Financial and Donovan did was put a sign in the window.

4        (k)     When there was an interested buyer sent to Donovan by Plaintiff herself,

5   Donovan made false statements to the buyer to dissuade the buyer from pursuing the transaction,

6   all without informing Plaintiff.  Thus, Defendants, Total Financial and Donovan created a

7   situation where Joe Sweeney and Cynthia Sweeney would be the only prospective buyers.

8        (l)     Finally, in about April 2006, Defendants, Total Financial and Donovan

9   offered to Plaintiff for the Sweeneys "to take the property off her hands."  Defendants, Total

10  Financial and Donovan represented that the resulting sales transaction would include the

11  Sweeneys assuming the First Mortgage.  When Plaintiff asked if the First Mortgage was

12  assumable, both Joe Sweeney and Donovan assured her that it was, many times.  In fact, the First

13  Mortgage, which Total Financial and Donovan arranged, was not assumable, but had a due-on-

14  sale clause.

15       (m)     Donovan then completely abandoned Plaintiff in the transaction.  He failed

16  to negotiate on her behalf, failed to advise her of the true nature of the transaction and of its

17  deficiencies and risks, and left her to deal directly with Joe Sweeney.

18       (n)     Rather than use a California Association of Realtors' form or any other

19  conventional form of purchase agreement, Joe Sweeney prepared a two-paragraph "Statement of

20  Agreement" of less than one page.

21       (o)     The Statement of Agreement states in its entirety as follows:

22  I Carol Sheridan, herein called "Seller" and Joseph and Cynthia
    Sweeney, herein called "Buyer" regarding 4095 Bonita Rd. #118,
23  Bonita, CA 91902 herein called "Property" agree to the following.

24  Buyer to take over the responsibility for paying Downey Loan,
    Property Taxes, and HOA Fees on Property.  Buyer agrees to pay
25  Seller a total of $44,000 distributed as $10,000 immediately, and a
    Note for $34,000 secured against Property.  The sale price of
26  Property is to be Considered at $384,000 which is the total of
    $303,600 fully accrued Downey Loan, $44,000 paid to seller,
27  $23,000 in unearned commission, $9600 in assumption of
    prepayment penalty, and $1300 in debt forgiveness for labor for
28  help moving, and $2500 for Closing Costs.  The seller agrees to

assist the buyer in keeping the remaining loan and property tax basis intact, since these low payments are the reason the buyer agrees to take over aforesaid payments.  The Buyer may advertise the home and show it to prospective tenants at reasonable times immediately, and take over full possession at 12:01 am on May 6, 2006.  Seller agrees to pay all bills due prior to this date with the exception of the May HOA dues.  Buyer and seller agree to open a Bank account together for the purpose of paying expenses for the property, seller is not required to make any deposits, but may not make withdrawals either, Seller is immediately giving up all interest via two deeds, the first recorded is for 50% to Cynthia Sweeney, and the second deed is the other 50% is given to Joseph Sweeney.

(p)    Thus, the Sweeneys arranged to purchase the Property for $384,000 under the following terms:

| | |
|---|---|
| Cash | $10,000 |
| Credit for Note purportedly to be secured "against Property" | $34,000 |
| Credit purportedly for "Downey Loan" | $303,600 |
| Credit for "Unearned" purported commission | $23,000 |
| Credit for purported  "Assumption of prepayment penalty" | $9,600 |
| Credit for purported "Debt forgiveness" for help moving | $1,300 |
| Credit for purported "Closing Costs" | $2,500 |
| Total | $384,000 |

(q)    Defendants, Total Financial and Donovan misrepresented the nature of the transaction.  They misled Plaintiff to believe that the transaction required them to "take over the responsibility for paying the Downey Loan," i.e., assume the First Mortgage.  They misled her to believe that she was being relieved of all of her obligations under the First Mortgage, for property taxes, for HOA dues, and for any other obligation or responsibility for the Property.  They misled her to believe that as of the time of the transaction, April 19, 2006, she would hold a promissory note receivable for $34,000 that would be secured by a security interest in the Property.  They misled her to believe that the amount of credit chargeable to Plaintiff and a deduction from the purchase price was $303,600.  They misled her to believe that they were entitled to phantom credits and deductions from the purchase price, and that these amounts were chargeable to

///

6

1    Plaintiff, for a real estate commission, and other charges for a prepayment penalty, "debt

2    forgiveness," and "closing costs."  None of this was true.

3            (r)      As instructed by Defendants, on or about April 19, 2006, Plaintiff signed

4    and delivered two grant deeds, one for a 50 percent interest in the property to Cynthia Sweeney

5    purportedly as a tenant in common with Plaintiff, and one to Joe Sweeney for the other 50 percent

6    interest in the property.  The Sweeneys did not record the deeds.  Nonetheless, Plaintiff's delivery

7    of the deeds to the Sweeneys conveyed title even though the conveyance of title was not shown

8    on the public records.  Plaintiff is informed and believes that Defendants or some of them

9    structured the transaction this way to deceive not only Plaintiff but to also deceive the lender

10    holding the First Mortgage so that the lender would not become aware of the transaction and

11    enforce its due-on-sale clause, and to deceive the County of San Diego to avoid reassessment of

12    property taxes.

13            (s)      The Defendants' failure to record the deeds adversely affected Plaintiff's

14    real property tax liability and unjustly enriched Defendants.  Prior to the sale of the Property to

15    the Sweeneys, Plaintiff lawfully claimed a Homeowners' Property Tax Exemption, and benefited

16    from the San Diego County Property Tax Assistance Program for seniors and disabled people.

17    Plaintiff should have been able to receive these benefits on her newly purchased property after the

18    sale of the Bonita Property to the Sweeneys.  However, she was not able to because record title to

19    the Bonita Property remained in her name.  In addition and for the same reason, the Sweeneys

20    improperly benefited from those programs.

21            (t)      The Sweeneys paid $10,000 in cash and gave her a copy of a "Note

22    Secured by Deed of Trust" in the original principal amount of $34,000 signed by the Sweeneys

23    ("Note").  However, all of the other components of the purchase price failed.  Specifically:

24            (i)      The Sweeneys did not at the time of purchase provide Plaintiff with

25    any deed of trust, mortgage or any other security instrument creating a security interest to secure

26    their Note.  Months after the transaction the Defendants provided Plaintiff with a Deed of Trust

27    and Assignment of Rents from only Cynthia Sweeney, but even the security interest provided by

28    this instrument was wiped out due to the Sweeneys' failure to pay the First Mortgage and

7

1  foreclosure by the lender under the First Mortgage, thereby leaving the Note unsecured.

2  Furthermore, they have never delivered the original of the Note.  They made principal payments

3  of only about $1,200 plus interest, and then ceased making any payments as of about March 2008.

4          (ii)      The Sweeneys never assumed the "Downey Loan" leaving Plaintiff

5  as the sole obligor on the First Mortgage.  The Sweeneys made some payments on the First

6  Mortgage, usually late.  However, they made minimum payments thereby invoking the negative

7  amortization feature of the First Mortgage (on which Plaintiff was still liable) and increasing the

8  principal balance, and then defaulted completely on the First Mortgage.  Thus, they did not "take

9  over the responsibility for paying the Downey Loan," as promised.  In addition, Plaintiff is

10  informed and believes that the Sweeneys' late payments and eventual default were reported as

11  adverse credit events as to Plaintiff.

12          (iii)      The credit against the purchase price for the "Downey Loan" was

13  overstated by approximately $20,284.25 in the Statement of Agreement.  The credit amount was

14  $303,600.  As of April 10, 2006, the principal balance was approximately $283,315.75.

15  Furthermore, the Sweeneys used the First Mortgage's negative amortization feature to run up the

16  principal balance after the purchase, further adding to Plaintiff's liability.

17          (iv)      Defendants, Total Financial and Donovan did nothing to earn a

18  commission of $23,000 or any amount.  In fact, Defendants, Total Financial and Donovan

19  breached their fiduciary duties to Plaintiff in many ways, resulting in a forfeiture of the

20  commission even if it had been earned.  Defendants themselves described the commission as

21  "unearned."

22          (v)      The prepayment penalty in the amount of $9,600 or in any amount

23  was never paid, and the Sweeneys were never obligated to pay any prepayment penalty.  No

24  prepayment penalty ever became payable because the loan was not "prepaid" before the penalty

25  period expired.

26          (vi)      There was no debt forgiveness of $1,300 or any amount of debt

27  because Plaintiff owed the Defendants nothing.

28  ///

1                           (vii)    The Sweeneys never paid any closing costs of $2,500 or any

2  amount.  No closing costs were ever incurred or paid in this transaction.  Defendants, Total

3  Financial and Donovan never opened any escrow, procured any title insurance, communicated

4  with the First Mortgage lender, or did any of the other customary tasks involved in a real property

5  transaction.

6                           (u)     In or about December 2006 and January 2007, Defendants or some of them

7  created two additional deeds, in addition to the two deeds described above that Plaintiff signed

8  and delivered to the Sweeneys on or about April 19, 2006, for a total of four deeds.  They

9  obtained from Plaintiff and recorded one deed purporting to create a joint tenancy between

10  Plaintiff and Cynthia Sweeney as to a 50 percent interest.  They obtained from Plaintiff another

11  deed to Joe Sweeney as to the other 50 percent interest but did not record that deed.  This left the

12  public record erroneously showing Plaintiff to be a 50 percent owner of the property as a joint

13  tenant with Cynthia Sweeney, which made Plaintiff potentially liable for expenses and taxes

14  associated with the ownership of the property, but in fact Plaintiff had already conveyed 100

15  percent of her interest to the Sweeneys via the April 19, 2006, deeds.  Defendants also belatedly

16  recorded a deed of trust and assignment of rents, but signed only by Cynthia Sweeney and not by

17  Joe Sweeney ("Second Deed of Trust").

18                           (v)     Furthermore, Defendants made late payments and sent bounced checks on

19  the First Mortgage, all to the detriment of Plaintiff's credit.  As of about March 2008, Defendants

20  then failed to make any payments on the First Mortgage at all.

21                           (w)    In addition, the payments on the $34,000 note in favor of Plaintiff were

22  chronically late and as of about March 2008, the Sweeneys stopped making them at all.

23                           (x)     By about March 2008, the Sweeneys stopped paying all expenses with

24  respect to the property.  These include both the First Mortgage held by Central Mortgage, the

25  Second Deed of Trust held by Plaintiff, home owners' association dues, taxes and insurance.

26  However, the Sweeneys continued to accept the rent from the property.

27                           (y)     In the absence of payments on the First Mortgage, Central Mortgage began

28  to issue default notices and eventually started foreclosure proceedings against the property.

1    (z)    Plaintiff, therefore, as the junior lien holder served notices on both the

2  Sweeneys and the Sweeney's tenant under California Civil Code § 2938, exercising the

3  assignment of rents clause under the Second Deed of Trust, and lawfully directing the rents to be

4  paid to Plaintiff due to the Sweeneys' defaults under both Deeds of Trust.  The Sweeneys directed

5  their tenant to disregard that lawful notice and to continue to send the rent to the Sweeneys.  The

6  Sweeneys continued to take the rent income while paying no mortgage payments or property

7  expenses.  The Sweeneys' actions constitute conversion and a further fraud on Plaintiff.

8    (aa)    Plaintiff is informed and believes that Central Mortgage has since

9  foreclosed on the Property, thus wiping out any security interest securing the Sweeney's $34,000

10  note in favor of Plaintiff including the Second Deed of Trust executed by Cynthia Sweeney

11  securing the Sweeney promissory note.

12    (bb)    Thus, Defendants ended up buying their clients', Plaintiff's, Property by

13  paying only $10,000, rather than the $75,000 in equity they represented she had in the Property.

14  They secured for themselves the rental income to service wholly or substantially in part the

15  Property's mortgages and expenses, and all of the upside potential of any appreciation in the

16  value of the Property.  The downside, however, they left for their client, the Plaintiff.  They

17  structured the transaction so that if its value declined, as it did, they could just walk away from

18  the Property and leave the resulting debts, loss of equity, and damage to credit to their client,

19  Plaintiff, and leave her to attempt to collect from them the balance on the Note.  That is exactly

20  what they did.

21    10.    A trial date was not yet set in the State Court Action when it was stayed by the

22  filing of Debtors' first Chapter 7 case on April 7, 2009, case number 09-04556-JM7.  That case

23  was subsequently dismissed and Debtors filed their current Chapter 7 case on May 7, 2009.

**FIRST CLAIM FOR RELIEF**

**[False Pretenses, False Representation or Actual Fraud – 11 U.S.C. § 523(a)(2)]**

26    11.    Plaintiff incorporates paragraphs 1 though 10 by reference.

27    12.    As set forth above, Plaintiff is informed and believes and thereon alleges that

28  Defendants made a number of representations to Plaintiff with respect to the nature of the

10

1    transaction she was entering into with Defendants that were false and were intended to and did

2    deceive Plaintiff into parting with her property without adequate compensation and protection.

3           13.     Plaintiff is informed and believes and thereon alleges that Defendants

4    misrepresented the nature of the transaction, including without limitation, that the transaction

5    included the assumption of the First Mortgage by the Sweeneys when, in fact, the transaction left

6    the First Mortgage in Plaintiff's name.  Defendants also represented that the transaction included

7    Plaintiff's $34,000 Second Mortgage to the Sweeneys being secured by the Property when in fact,

8    it was not secured.  Defendants further represented that the transaction included closing costs

9    when, in fact, no such costs were incurred (collectively the "Representations").  Plaintiff is

10   informed and believes that each of these Representations regarding the nature of the transaction

11   was false when made by each of the Defendants or when made with their connivance.

12          14.     Plaintiff is informed and believes that each of the Defendants knew the

13   representations were false when made, or that the Defendants made the Representations

14   recklessly and without regard for their truth.

15          15.     Plaintiff is informed and believes that the Defendants made or connived in the

16   making of the Representations for the purpose of inducing Plaintiff to part with her property

17   without fair compensation or adequate protection of her interests.

18          16.     At the time that Plaintiff agreed to so part with her property and entered into the

19   Statement of Agreement, Plaintiff was unaware of the falsity of the Representations and

20   reasonably believed them to be fair and accurate.

21          17.     Plaintiff reasonably and justifiably relied upon the Representations of Defendants,

22   who held themselves out to be experienced in such matters as her real estate brokers and agents,

23   in entering into the Statement of Agreement and parting with her property after receiving only

24   $10,000 from Defendants.

25          18.     As a direct and proximate result of Defendants' false representations, Plaintiff has

26   incurred damages the total of which is presently unknown and will be proved at trial, but which is

27   believed to exceed $100,000, prejudgment interest, expert witness fees, and attorneys' fees and

28   costs.

11

1    19.    Defendants' actions constituted fraud, oppression, and malice entitling Plaintiff to

2    exemplary and punitive damages.

3    20.    As a senior citizen and disabled adult under California Civil Code § 3345, Plaintiff

4    is entitled to damages up to three times greater than the trier of fact would otherwise impose.

5    21.    By reason of the false pretenses, false representations, and/or actual fraud of the

6    Debtors, Plaintiff's claim for repayment of the debt found owing to her by the Debtors is not

7    dischargeable in bankruptcy by operation of 11 U.S.C. § 523(a)(2)(A).

8                          **SECOND CLAIM FOR RELIEF**

9    **[Fraud or Defalcation While Acting in Fiduciary Capacity – 11 U.S.C. § 523(a)(4)]**

10   22.    Plaintiff incorporates paragraphs 1 through 21 by reference.

11   23.    As set forth above, Defendants were Plaintiff's agents and brokers and as such

12   owed numerous fiduciary duties to Plaintiff.

13   24.    Plaintiff is informed and believes and thereon alleges that Defendants committed

14   fraud and defalcation while acting in a fiduciary capacity by entering into a grossly unfair and

15   fraudulent transaction to purchase Plaintiff's property that was not in Plaintiff's best interests but

16   was structured solely for the benefit of Defendants.

17   25.    Specifically, Defendants committed the following acts or omissions, among other

18   things:

19          (a)    Failing to diligently market Plaintiff's property;

20          (b)    Failing to disclose Defendants' intention of buying the property;

21          (c)    Discouraging any potential buyers of the property other than Defendants;

22          (d)    Failing to disclose other potential buyers to Plaintiff;

23          (e)    Misrepresenting that the First Mortgage was assumable and the effect of

24   that fact on the proposed transaction;

25          (f)    Failing to act loyally, fairly, honestly and in Plaintiff's best interests;

26          (g)    Putting their own interests before Plaintiff's and acting to her detriment;

27          (h)    Deducting from the sales price credits and amounts to which the Sweeneys

28   were not entitled;

12

1              (i)     Purchasing Plaintiff's Property for less than fair and adequate

2    consideration;

3              (j)     Failing to relieve Plaintiff of her obligations with respect to the Property;

4              (k)     Failing to assume and pay for all obligations with respect to the Property;

5              (l)     Paying late and defaulting on obligations that were in Plaintiff's name but

6    were the Defendants' duty to pay;

7              (m)     Damaging Plaintiff's credit reputation;

8              (n)     Failing to advise Plaintiff as to the risks and the nature of the transaction

9    into which they induced Plaintiff;

10             (o)     Accepting secret profits and misrepresenting the financial facts underlying

11   the transaction;

12             (p)     Failing to provide any appraisal, loan application, financial statements,

13   credit report, preliminary title report, title insurance, the original Note itself, a valid and timely

14   deed of trust or mortgage, or other documents reasonably necessary to protect Plaintiff's interest

15   as a prospective lender or lender under the Note;

16             (q)     Failing to advise and explain to Plaintiff the risks she was taking in

17   accepting the Note as part payment for the Property, including that the promised security interest

18   in the Property would be subordinate to and subject to the First Mortgage and the Sweeneys

19   paying the First Mortgage, the risk of the Property declining in value and thereby reducing or

20   eliminating the value of the security interest, the credit worthiness or lack of it of the Sweeneys,

21   and the risks of the Sweeneys' defaulting on the Note, which they ultimately did;

22             (r)     Failing to properly sign and record a deed of trust for the Second Mortgage

23   at the time of the transaction and then providing a deed of trust signed by Cynthia Sweeney only;

24             (s)     Defaulting on the First Mortgage so as to wipe out the Second Deed of

25   Trust;

26             (t)     Failure to record both grant deeds at the time of the transaction;

27             (u)     Obtaining from Sheridan and recording a false and misleading deed

28   purportedly naming Sheridan and Cynthia Sweeney as joint tenants;

13

(v)     Keeping the benefit of unearned and forfeited commissions;

(w)     Illegally collecting rents on the property and converting rent proceeds to which they were not entitled to their own use and benefit;

(x)     Failing to account for all monies due to Plaintiff from the transaction; and

(y)     Failing to review, sign and date all instruments.

26.     As a direct and proximate result of Defendants' fraud and defalcation, Plaintiff has incurred damages the total of which is presently unknown and will be proved at trial, but which is believed to exceed $100,000, prejudgment interest, expert witness fees, and attorneys' fees and costs.

27.     Defendants' actions constituted fraud, oppression, and malice entitling Plaintiff to exemplary and punitive damages.

28.     By reason of the fraud and defalcation while acting in a fiduciary capacity by Debtors', Plaintiff's claim for repayment of the debt found owing to her by the Debtors is not dischargeable in bankruptcy by operation of 11 U.S.C. § 523(a)(4).

**THIRD CLAIM FOR RELIEF**

**[Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)]**

29.     Plaintiff incorporates paragraphs 1 through 28 by reference.

30.     At the time the representations were made by the Defendants and at the time Plaintiff took the actions herein alleged, Plaintiff is informed and believes and thereon alleges that Defendants did all those things referred to in this Complaint willfully and without justification and excuse, with knowledge of their consequences, and in direct and actual breach of those duties which the Debtors owed to Plaintiff.  The Debtors knew or should have known that, had Plaintiff known that the Debtors did not intend to perform, Plaintiff would not have sold her Property to Debtors.  Plaintiff's reliance on the Debtors representations was reasonable and justified.

31.     Plaintiff is informed and believes and thereon alleges that Defendants' actions constituted fraud, oppression, and malice entitling Plaintiff to exemplary and punitive damages.

32.     As a direct and proximate result of Defendants' willful and malicious actions, Plaintiff has incurred damages the total of which is presently unknown and will be proved at trial,

1 | but which is believed to exceed $100,000, prejudgment interest, expert witness fees, and

2 | attorneys' fees and costs.

3 |      33.     By reason by the Debtors' willful and malicious actions described herein,

4 | Plaintiff's claim for repayment of the debt found owing to her by the Debtors in not dischargeable

5 | in bankruptcy by operation of 11 U.S.C. § 523(a)(6).

6 |      WHEREFORE, Plaintiff prays for judgment against the Debtors as follows:

7 |      1.     For a decree that said claim be excepted from discharge pursuant to 11 U.S.C.

8 | §§ 523(a)(2), 523(a)(4) and 523(a)(6);

9 |      2.     For compensatory damages according to proof plus prejudgment interest;

10 |      3.     For punitive and exemplary damages including without limitation forfeiture of

11 | commission, including without limitation up to three times greater than the amount the trier of

12 | fact would otherwise impose due to Plaintiff's status as a disabled adult under California Civil

13 | Code § 3345 (West 2009);

14 |      4.     For reasonable attorney fees and costs; and,

15 |      5.     For other just and equitable relief.

16 | Dated:  July 29, 2009                       PYLE SIMS DUNCAN & STEVENSON

17 |                                         A Professional Corporation

18 |                       By____/s/  Kathleen A. Cashman-Kramer____

19 |                           KATHLEEN A. CASHMAN-KRAMER<br>Attorneys for Plaintiff, CAROL SHERIDAN

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |